Mr. Dowd. Good morning, Your Honor. I may please the Court. My name is Matthew Dowd of Wiley-Ryan. I represent the appellant Maj Kam-Almaz. As the Court knows, Mr. Kam-Almaz brought suit against the federal government for damage the government caused his laptop computer as he was returning home through Dulles Airport. ICE agents and ICE agencies temporarily detained, rather, his laptop, and in doing so caused irreparable damage to his laptop, to the files on there, and to damage to his business. Mr. Kam-Almaz filed suit in the Court of Federal Claims asserting two claims. One was for breach of an implied-in-fact contract for bailment, and the second claim was an uncompensated taking under the Fifth Amendment. As I recall, he first requested compensation or recognition, is that right, from Homeland Security? Yes, Judge Newman, that's right. There is an administrative process through which a private party who has suffered damage from customs or ICE can file for relief, and it's limited, and as far as I can tell, it's at the discretion of the agency. In this case, the agency denied Mr. Kam-Almaz's request for relief, and thereafter he brought suit in the Court of Federal Claims. But how could there have been a contract here? There was no mutuality of intent to contract, there was no authority on the part of the agency. Well, Judge Laurie, I'd like to just emphasize one thing. Here, we're simply at the pleading stage, so the Court of Federal Claims dismissed it at the pleading stage. So the question is, when you look at Mr. Kam-Almaz's complaint and the amended complaint, taking those allegations as true, is it plausible that there was consideration, is it plausible that there was an agreement? Well, the problem you have with that, Mr. Dowd, even though in your great brief you try to distance yourself from the words of the complaint and argue that government seizes on the word seizure, and that's unfair, the problem is the complaint, the allegations taken on the complaint include his allegation that the laptop was seized. And why doesn't that place it within the police powers clause, and how is this implied in that contract? For several reasons, Judge Price. One, the complaint does use the word seizure or seized, but at the same time, the complaint clearly states that there was an agreement between the ICE agent and Mr. Kam-Almaz that the laptop would be returned in working condition within seven days, that was an oral agreement, and when you look at form 6051-D, which is at Joint Appendix page 60, the form itself indicates that the property will be returned. Okay, but you're saying this is an agreement, this form, which he didn't sign, and which the government just says, we're taking this, and there's a line that says shipment may be detained for up to 30 days, this in your view is the contractual arrangement that satisfies Judge Lurie's question about all of the elements of a contract? No, Judge Price. The question here is whether there's an implied in fact contract, and under classic common law of contract, when there's an implied in fact contract, you look at the conduct of the parties, that document, form 6051, is evidence of the conduct that amounts to an agreement. There's a good example from Judge Post in the 7th Circuit in a case where he talks about an implied in fact contract. If I go into a newspaper stand, and newspapers for sale, and I pick up that newspaper with the intent of paying, but I never say anything to the vendor, and the vendor never says anything to me, that's an implied in fact contract, because the understanding between the two individuals is that by me taking the paper, I will pay for it. But the context there is that people pay for newspapers. The context here is that there was a seizure. I disagree with that, Judge Lurie, and respectfully I do, because here, based on the complaint, there's a specific allegation that Agent Muldowen intended to return the laptop, and in fact there's an email in the Joint Appendix at JA-75 that indicates that ICE was in fact, quote, using its best efforts to restore the information on the laptop, so it could return it to Mr. Kahn-Almaz. There's also a letter from presumably one of Agent Muldowen's supervisors, Mary Forman, that indicates that there was one, an offer to let Mr. Kahn-Almaz copy files at the time the laptop was detained, and also a significant effort to actually return the laptop and its files. You also have a taking argument. Haven't we held in Amerisource that a seizure does not amount to a taking? It's not for public use? There are cases that state and suggest that if property is taken pursuant to the police power, then there is no taking under the Fifth Amendment. The question here, though, and when you look at the facts of all these cases, this is Amerisource, this is Acadia Technologies, and more importantly, this is Venice from the Supreme Court, in all of those cases that involve takings where the courts have decided there's no taking because of police power action, they all fall into one of two categories. The property itself violated the law, that is, it is contraband, or second, the property was being used in an illegal manner. Venice is a classic example. Venice involved the seizure, essentially a seizure, of an automobile that was used by a husband for prostitution. The wife claimed that as an innocent owner, she had a viable taking claim. The court said no, and what the court said is that there's no taking because that property itself was an instrumentality of the crime. And in Venice, in J.W. Goldsmith, an older Supreme Court case, in Calero Toledo, another Supreme Court case involving a takings claim, all of those cases are absolutely concerned with the situation that we have here today. When there is a physical... I want to take you on another track, because I haven't heard you say anything about the Kozak case, which I thought was your best support for your position. Do you think that that's dictum? No, Judge Newman, it's not dictum. Kozak is a very good case for us, and Kozak explicitly deals with the situation almost on point here, and what Kozak, the holding of Kozak is a little different because what Kozak dealt with was a tort claim in the Federal Tort Claims Act. And what Kozak explicitly says is that a claim for a bailment, implied in fact bailment, is not foreclosed simply because the government hasn't waived immunity for tort claims when property is damaged by customs. And that's what we have here, and that's why Mr. Kan-Almaz brought a bailment claim and not a tort claim. So the Kozak case says that a Tucker Act claim may work if the elements of a contract implied in fact are satisfied. I'm not sure I understand how that helps you. I mean, we're still looking at whether or not the elements of a contract implied in fact are met, right? That's correct, Judge Post. And here, again, the question is whether the elements of an implied in fact contract for bailment have been plausibly alleged. And it's not whether my client has satisfied his burden of actually proving those elements. It's just a question of whether when you read the amended complaint and the complaint taken together, whether you can plausibly envision a situation where there was an agreement between Mr. Kan-Almaz and Agent Muldown that his property would be temporarily given to ICE and then later returned. And that's exactly what Mr. Kan-Almaz has alleged. And so on that allegation, he satisfies the classic elements of a bailment. A bailment is nothing more than one person giving property to another. So possession transfers, but title doesn't. And there's some intent to use the property. The bailment can be for the sole benefit of the bailor, or it could be sole benefit of the bailee. And again, the question only today is whether we satisfy that initial hurdle under both Fombly and Iqbal of whether we've had a plausible allegation. Now it might be... But the word you're using here, the key word in my view, is giving, whereas the word in the complaint was seized, right? There's a difference, is there not, between those two? There is. There is a difference between those two words. But when you read the complaint as a whole and the other facts alleged in the complaint, you can see that there was some give and take between Mr. Kan-Almaz and Agent... But I didn't see anywhere where there's any dispute that ICE took his computer. He didn't voluntarily say, here, why don't you have this for a few days and take a look at it. It was seized, right? Is there any dispute about that? Yes, there is a dispute, because when you look at the form 6051-D, it doesn't say it was seized. It says it was detained. And that meaning of detained means being temporarily held. And even if you look at the Alliance Assurance case from the Second Circuit and the Coon v. Nagel case in the Claims Court, both of those cases acknowledge that under circumstances such as these, when customs takes property for a temporary time, a bailment claim may lie. And we've alleged all the elements of a bailment claim here. And it may be that during discovery, other facts arise that defeat our claim, or it may be that there's actually other facts that are beneficial for us. But we've satisfied all the elements that constitute a traditional bailment claim. Now, the government suggests this is the nature of a Fourth Amendment claim, and you ought to be in federal court arguing Fourth Amendment, and it seems to me either you or the amicus, your answer to that seems to be exclusively, well, we can't get any money out of that, so it doesn't work for us. Is there any other argument as to why or not you wouldn't pursue a Fourth Amendment claim? Well, the Fourth Amendment claim, I think, goes to the case that the claim is completely divorced from the bailment claim. Bailment lies in contract. The Fourth Amendment is a due process issue here. As the amicus brings up in its brief, there are some cases that suggest that, in these instances, there is no Fourth Amendment due process violation or unreasonable search violation. The Ninth Circuit has addressed this. Now, I will say that the Supreme Court has not yet addressed this issue in terms of what level, if any, of suspicion is required for customs or ICE to temporarily detain a laptop and to essentially go through and copy every single file that's on a laptop. Now, that's a Fourth Amendment concern here. We're not concerned about that. Our concern here is that when the ICE agent took temporarily the laptop, he told Mr. Kamal Maaz that we'll hold it for seven days. You'll get it back in working condition. That didn't happen. He lost his files. They're irretrievably gone. He lost his business, and based on the complaint, this has been a complete disaster for his business. Sounds like a toy. Your Honor, there's clear case law, and this goes to Kozak and it goes to Haslack. Those cases soundly stand for the proposition that even though a bailment does sound like a tort, there are two distinct claims, and just because a claim might fail under tort law, you have a viable claim under contract law. Do we know whether in Kozak, after the Supreme Court said that this, you may very well have a remedy in contract, whether that petitioner sought such a remedy? Yes, Judge Newman, and I think looking at what happened in the Supreme Court case of Kozak is extremely instructive here, because what happened when it got remanded to the trial court, both sides actually moved for summary judgment, so it wasn't even a dismissal under 12b-6. They moved for summary judgment. The court denied that. The court had a full trial on the merits, and even though the plaintiff in that case lost, the question is completely relevant here, is in that case, a case very similar to ours, the plaintiff seemed to satisfy the 12b-6 pleading requirement, and he got to the point where he could get through discovery. He ultimately failed, but the question for the panel today is, has the complaint surpassed that plausibility standard? And I submit it as yes. I'm into my rebuttal time. I will save your rebuttal time, but let's hear from the government. Tell us if the government's position is that someone accepting all the facts has pleaded. Is there a remedy for such a person? It may please the court. There are potential remedies, but they are not under the takings clause, and the complaint in this case has not satisfied that standard. What is the remedy? The potential remedies are a suit in the district court under the due process clause for unreasonable delay, and, in fact, the complaint alleges a due process violation and alleges unreasonable delay several times. There is also the administrative remedy, which Congress has established for travelers whose property is damaged. There are caps and there are exceptions to the payments that are provided. Oh, that's an administrative. He tried an administrative remedy and is now seeking judicial relief. That's correct, but it shows where the source of the remedy lies, and that's with Congress, that Congress can provide a remedy, and it actually has. It does not work in this case. Is the cap $50,000? I think there are two caps. One is for $1,000 and one is for $50,000. But another remedy is to go to Congress and seek a private bill or to gather together with similarly situated citizens and ask Congress for relief. So everyone whose property is on these cleanings is damaged by the Customs Service has to get a private bill from Congress in order to have relief? It is a source of potential relief. The fact that the takings clause does not provide relief doesn't mean that the police powers and the public use holdings of this court. What's your answer to this statement? I read it from the Supreme Court because I've been pressing this to doubt. It made an impression on me. There exists at least one other remedial system that might enable someone in petition's position to obtain compensation from the government, not just for delay, but compensation. If the owner of property detained, they use the word detained, which is in the form, detained by the Customs Service, we're able to establish the existence of an implied contract of bailment. Right. And you're reading from Hasluck, I think? Kozak. Or Kozak. Either one. But in both cases, the court went on to say, we express no opinion on whether the complaint in this case could state a claim for breach of a bailment contract as a jurisdiction. As a matter of jurisdiction, the Tucker Act recognizes bailment contracts. And so what the court was saying was... Norris said he could bring suit under the Tucker Act. 28 U.S.C. 1491, the Supreme Court gave a fair amount of free legal advice there. Right. Could bring suit, meaning... The argument in that case was whether jurisdiction under the Tucker Act was foreclosed by the Federal Tort Claims Act. All Mr. Dowd wants is to get into court. Right. But we didn't argue that the bailment claim should be dismissed for lack of jurisdiction. We recognize that the Supreme Court said that the Court of Federal Claims has jurisdiction to consider those kinds of claims. But in those cases, Justice Blackmun, for example... And you contradicted yourself? No, I'm not contradicting myself. We didn't move to dismiss for lack of jurisdiction. We understand that the Court of Federal Claims possesses jurisdiction to entertain claims based upon a bailment contract. We moved to dismiss a bailment contract for failure to state a claim for which relief may be granted. That assumes that the Court had jurisdiction to consider the claim, but that this particular complaint did not satisfy the requirements of Iqbal and Twombly. In fact, the allegations in this complaint are inconsistent with the types of allegations that would be necessary to state a claim for breach of a bailment contract. And in particular, the appellant had no choice to retain the laptop. Once he was in the presence of customs, the laptop was going to be taken from him. He had no choice. So if you assume that this is a contract, it clearly is an involuntary contract. Well, here's the problem I have, and I think I have some questions along the lines that Judge Newman asked. If you take the footnote from COSAC, COSAC, the facts there, that was a seizure case, right? Just like this. Right. And if the Supreme Court, looking at a seizure case, was willing to at least suggest that a remedy might lie under the Tucker Act as an implied impact contract, why should we, under the facts in this case, say what you say in the red, which is they admit it's a seizure, and okay, they can't admit the elements of a contract. Well, it's a seizure, and they say that it was involuntary. They say that they're still disputing the term. COSAC? No, excuse me. I mean the appellant. That it was involuntary. The appellant is still very unhappy about the fact that he wasn't allowed to make copies. There was no meeting of the minds on the terms of any kind of entrustment. The only cases, and again, Is that any different than the facts in COSAC? COSAC ultimately was not successful. COSAC ultimately was not successful in demonstrating a bailment contract. All the Supreme Court said was that if it's a contract, then the Court of Federal Claims has jurisdiction and send it back, and said it was a jurisdictional ruling, that the Tucker Act was not ousted of jurisdiction simply because there was a separate remedy or not under the Federal Tort Claims Act. So in COSAC, ultimately, the Court held that there was no bailment contract. There are only two cases of which I'm aware, and I've looked very hard, in which courts have ever found a bailment contract. It was a Tort Claims Act. They said that you have no remedy under the Tort Claims Act. They didn't reach the other issues. They suggested, proposed that this is what your remedy, this is where you may have a remedy. Ultimately, in that case, the courts found that there was not a bailment contract. All the court did in COSAC was recognize that there was another... Not as a matter of law, but under the particular facts, as I understood it. The court didn't make any kind of judgment on those facts, and in particular in Hasluck, Justice Blackmun wouldn't have even agreed that there was jurisdiction. But the majority in Hasluck said, we voiced no opinion on whether in this case there could be a bailment contract. We simply note that the Tucker Act is available. But COSAC actually reversed one of the cases that the appellant relies upon, and that's the Second Circuit case from 50 years ago, where the Second Circuit seemed to find some sort of constructive bailment, more of a bailment implied in law involving customs, detention, and seizure of property from a commercial importer. And that's an old case that's never been followed, and plaintiff admits that it was reversed by COSAC. It was reversed in part. It was appealed on a different issue. It wasn't taken up on the issue that he relies on it for, right? It was reversed in part, and it's never been cited as authority by any other court, as far as I know. Yeah, but the issue that he relies on it for was not one that was reversed. It was only reversed in part. I agree. The other case is Cooney v. Nagel, which was a court of claims case where the government won, so we couldn't appeal. In that case, Cooney v. Nagel, which is one of the world's largest freight forwarders and enters into bailment contracts all the time with its customers, provided a letter of credit to the Customs Service that the trial court held could be construed as a contract with Customs, but it didn't expressly state that Customs would take care of the property, return it in the same status it was when it was given to Customs,  which was money given to Customs and, of course, doesn't exist here, could be considered a contract. It needs to contain the express terms of a bailment contract in order to be a bailment contract. Here's the difficulty I'm having. I get step one. They took his computer, and he had no choice about that. But step two, if you want to understand the case this way in terms of what went down, after they're taking it, let's assume they say, well, we can do one of two things. We can throw this out after we're done with it. Or do you want it back? And if you want it back, you fill out this form, we get your address, and we'll give it back to you in 30 days. So he voluntarily says, no, I don't want you to throw it out. I want to enter into some sort of agreement with you, and that agreement is that you agree to give it back to me in 30 days in the same shape, and the parties both agree to that. Why does that start to sound like an implied effect contract, that aspect of the transaction? Because it's still within the discretion of the law enforcement official. They're still discussing the terms and conditions of the law enforcement exercise of police power. And, in fact, that isn't alleged in this case in any event. The officer never said, we're going to keep this forever. He said, we will look at it, we will try to get it back to you in seven days. The officer showed him as much courtesy as could be shown under the circumstances. So take my hypothetical. In that instance, would we be getting much closer to an implied effect? No, I don't think so, because it's still an exercise of law enforcement authority. It's still the use of the police power, and the officer still gets to decide. I mean, he might take into account, you know, the government tries to be as courteous and polite and accommodating to citizens as it can in the circumstances. So the officer might take into account what the property owner desires. And if the officer says to him, well, if you want it back, you're going to have to give me a check for $25 to pay for the postage and handling if you want it sent back. And he agrees to do that, and he writes out a check for the postage and handling in order to get it back within 30 days. I don't think that would form a contract. I mean, under this court's precedent, the payment of money to a government agency along with a form in order to obtain a service is not a contract. So I don't think paying money in order to get a particular special treatment, under this court's precedent, that would not be a contract. Did I hear you say that there is no limit to government discretion in law enforcement? No, I did not say that, Your Honor. There are, of course, constitutional limits. Under the Due Process Clause, a party who thinks that a law enforcement officer has violated his or hers civil rights could attempt to bring a Bivens action, and that would be an action for damages. I'm not violating his property rights. Only civil rights subject to discretionary constitutional review? Only civil rights? That's my question. Right. If someone violates your constitutional rights, an individual, and they're acting beyond the scope of their authority, then you can sue them as a Bivens action, and that would provide a damage remedy if you're successful. Well, now we're under the Fifth Amendment. But I didn't hear the government agree that there was a Fifth Amendment remedy. There is a statutory remedy that Congress has provided. It didn't apply to this particular person, but Congress has provided an administrative monetary remedy. There is a remedy of going to the district court and seeking an injunction under the Due Process Clause for unreasonable delay, which is what this complaint alleges. And I know you didn't like this possibility, but a citizen who feels aggrieved can always petition Congress or get together with similarly situated citizens and petition Congress. I do want to address Amerisource very quickly, because Amerisource, which was a recent decision by this case, also involved a seizure. And in that case, contrary to my learned colleague here, the drugs that were seized were not contraband in themselves. They were simply evidence. And the government said, we need to keep this as evidence. There was no in-rem forfeiture proceeding for the pharmaceuticals, and in fact, the government kept telling Amerisource, when we're done with it as evidence, we'll give it back to you. And as it turned out, the government never used it as evidence at the trial. So the property was seized. It was kept in the law enforcement officer's custody. The intent was always to return it, and it was ultimately returned, I think, after four years.  But this court nevertheless held that that was a valid exercise of the police power, and not a taking for public use under the Fifth Amendment. So this distinction, which actually is a repeat of the arguments that were made in Amerisource, this distinction between when the property itself is somehow tainted, as in Venice, and a situation where the property ultimately is determined not to be, as the laptop in this case, is not consistent with this court's ruling in Amerisource. So the issue, which I do agree with my colleague about, is whether this particular complaint was properly dismissed for failure to state a claim. Now, in the reply brief, the appellant really emphasizes that they want their day in court, and that it would be rare for this court to affirm a dismissal for failure to state a claim. There are many, many affirmances of dismissals for failure to state a claim, both in the contract area and in the takings area. Two important cases that we emphasize, and the plaintiff admits are relevant, are trauma services for whether a contract was formed. That's a foundational case that is cited frequently by this court, and that was a case where the trial court dismissed for failure to state a claim, and this court affirmed. On the taking side, Acadia, which we cite and rely upon extensively, that was a case where the customs service seized some fans and kept them, and they were damaged while they were in customs possession, and this court held that was not a taking. That was another case where the trial court dismissed for failure to state a claim based upon the facts of the complaint, and this court affirmed. For those reasons, as well as step forth in our brief, we respectfully ask that you affirm. Did you do this, Mr. Benjamin? Is that our new system, or was that some other kind of alarm? No. Had you finished your sentence? I just hope that wasn't a reflection of your view of my argument. Thank you, Ms. Davidson. I'm glad I didn't go over last time. Just a few quick points because I only have about a minute left. In trauma services group, the issue there was that there was the court actually determined that there was a memorandum of agreement that dealt with the issue of whether you had to pay x-ray tax. Completely different case in here. With regard to Amerisource, that is a recent case. Key distinction there, and that was an opinion written by District Court Judge Young. He focused on the fact that he was writing broad court. That's not a sound distinction. Your Honor, I did not mean to imply that at all, and I apologize if he took it that way. But my distinction there, and actually I was meant to emphasize it because he's one of my most recognized judges. My apologies. But there, if you look at the opinion, the panel focused on the fact that the court had determined through a Rule 41G proceeding under the Federal Rules of Criminal Procedure that there was some connection between the seized property and the criminal investigation. We don't have that here in this case. There's just a seizure or a taking or a detention of property without any allegation of wrongdoing. If you look at the takings claims, the government hasn't cited a single takings case in which a claim has been either dismissed or denied when the property isn't either associated with criminal activity or has contrabanded itself. And I would ask the panel to look closely at this court's opinion in Summers Oil. And Summers Oil is an opinion written by Judge Bryson where you had a very similar situation. The issue was whether they had adequately pled at the failure to state a claim level. And the panel explained that even if the complaint is a little inartful, it meets that standard. And I think that's what we have here. And just to clarify one thing, there was some discussion about COZAC. COZAC, if I remember correctly, when it went back down, it never decided the issue of whether there was a bailment. So both in COZAC and HOSHLAC, the question of whether the person had satisfied his pleading of a bailment, it was only decided after a full trial in COZAC, in HOSHLAC. Okay. Thank you. Thank you, Your Honor.